AO 257 (Rev. 6/78)

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT  ☐ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 1343 – Wire Fraud
18 U.S.C. §§ 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity;
18 U.S.C. § 2253(a) – Criminal Forfeiture

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: See Attached Sheet.

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

**DEFENDANT - U.S**
▶ CARRIE LYNN GRANT

**DISTRICT COURT NUMBER**
CR 24 403 AMO

FILED JUL 18 2024
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)
FBI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. ATTORNEY  ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form: Ismail J. Ramsay
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): EVAN M. MATEER, AUSA

**DEFENDANT**

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☒ On this charge
5) ☐ On another conviction  } ☐ Federal  ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No
If "Yes" give date filed

DATE OF ARREST ▶ Month/Day/Year
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT   Bail Amount: No Bail

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:     Before Judge:

Comments:

PENALTY SHEET
CARRIE LYNN GRANT

**Counts One to Four: 18 U.S.C. § 1343 – Wire Fraud**

Maximum twenty years' imprisonment (18 U.S.C. § 1343);
$250,000 fine (18 U.S.C. § 3571);
maximum term of supervised release: 3 years (Class C felony – 18 U.S.C. § 3583);
$100 special assessment (18 U.S.C. § 3013)

**Count Five: 18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity**

Maximum 10 years of imprisonment (18 U.S.C. § 1957(b)(1));
$250,000 fine or twice value of criminally derived property involved in transaction (18 U.S.C. §§ 1957(b)(2), 3571(b)(3));
maximum term of supervised release: 3 years (18 U.S.C. § 3583(b)(2));
$100 special assessment (18 U.S.C. § 3013)

# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: OAKLAND

---

UNITED STATES OF AMERICA,

V.

CARRIE LYNN GRANT,

FILED

JUL 18 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CR 24 403 AMO

DEFENDANT(S).

---

# INDICTMENT

18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity.

---

A true bill.

/s/ *Foreperson of the Grand Jury*

Foreman

Filed in open court this <u>18th</u> day of <u>July 2024.</u>

_Ivy L. Garcia, 7/18/24_
Clerk

Hon. Donna M. Ryu, Chief Magistrate Judge

Bail, $ ~~NO PROCESS~~ no bail warrant

ISMAIL J. RAMSEY (CABN 189820)
Acting United States Attorney

**FILED**

JUL 18 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 24 403 |
| Plaintiff, | |
| v. | VIOLATIONS: |
| | 18 U.S.C. § 1343 – Wire Fraud; |
| CARRIE LYNN GRANT, | 18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity; |
| Defendants. | 18 U.S.C. §§ 981(a)(1)(C), 982 & 28 U.S.C. § 2461(c) – Criminal Forfeiture |
| | OAKLAND VENUE |

INDICTMENT

The Grand Jury charges:

Introductory Allegations

At all times relevant to this Indictment:

1. Defendant Carrie Lynn GRANT resided in the Northern District of California.

2. Wells Fargo Bank was a financial institution, as that term is defined in Title 31, United States Code, Section 5312, the deposits of which were insured by the Federal Deposit Insurance Corporation.

3. Charity 1 was a non-profit charity organization based in Walnut Creek, California, within the Northern District of California. Charity 1 provided educational programming in financial literacy,

INDICTMENT

work and career readiness, and entrepreneurship to underserved students. Charity 1 was affiliated with a national organization, Charity 2. Charity 1 made frequent payments to Charity 2 for the use of its brand, for program materials, and for other services. Charity 1 would pay other vendors for services related to events, services such as payroll and benefits, and payments for rent. Charity 1 employed a small staff based in Walnut Creek, and otherwise relied on volunteers to execute its mission. Charity 1 had a 401(k) that allowed employees to make contributions to retirement accounts through deductions from their salary. Until September 2022, Charity 1's 401(k) program was managed by Automatic Data Processing, Inc. Beginning in September 2022, the program was managed by TriNet Group, Inc.

4. From 2015 to 2023, GRANT was employed by Charity 1. GRANT was initially hired in May 2015 as an office manager and administrative assistant. Among other duties, GRANT was responsible for making disbursements to pay Charity 1's expenses, including expenses for events, rent, payroll, and payments to Charity 2. GRANT was promoted to Senior Finance/HR Manager in August 2022.

5. Charity 1 maintained a business checking account at Wells Fargo Bank with an account number ending in -0247. GRANT was the only person with access to the online account, including the Wells Fargo Direct Pay system used to initiate ACH (Automated Clearing House) payments. ACH is a U.S. financial network used for electronic payments and money transfers. Only GRANT and the President of Charity 1 had authority to sign checks from the account ending in -0247.

6. GRANT maintained various personal financial accounts, including a personal checking account at Wells Fargo Bank, with an account number ending in -9256.

### The Scheme to Defraud

7. Beginning at a date unknown to the grand jury, but no later than November 29, 2017, and continuing through a date unknown to the grand jury, but to at least October 26, 2023, GRANT knowingly devised, intended to devise, and carried out a scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omissions and concealment of material facts with a duty to disclose.

As part of the conspiracy and scheme to defraud:

INDICTMENT                                                          3

8. GRANT used her position as finance manager for Charity 1 and her control of Charity 1's Wells Fargo Account to direct fraudulent payments from Charity 1's accounts to her own personal Wells Fargo Bank account -9256. She did so without authority, and made many false entries and misrepresentations to further and to conceal her scheme. Additionally, GRANT omitted to inform the President of Charity 1, or any of its other leadership, despite owing a duty to disclose, that she had fraudulently initiated payments to herself.

9. Between May 18, 2020, and June 22, 2023, GRANT used her control of Charity 1's -0247 account to initiate at least 62 fraudulent ACH (Automated Clearinghouse Payments) payments to her personal -9256 account. GRANT attempted to hide the transfers by entering a fraudulent description into the ACH system. For most of the payments, GRANT falsely described the payments in the Wells Fargo Bill Pay system as being made to Charity 2 for program fees, event expenses, or program materials. In fact, Charity 2's records did not contain any invoices supporting any of the 62 payments. These 62 fraudulent ACH payments totaled at least $1,087,181.30. GRANT did not use these funds to benefit Charity 1 or for the purposes she listed in the ACH descriptions. Instead, as part of her scheme to defraud, she used these funds for her own benefit, including by spending the funds on luxury travel, concerts, and tickets to sporting events.

10. Additionally, GRANT also used her authority to sign and deposit checks on behalf of Charity 1 to defraud Charity 1 of funds. Between November 29, 2017, and March 17, 2020, GRANT fraudulently deposited at least 20 checks drawn from Charity 1's -0247 account into her personal -9256 account. GRANT listed the payee on these checks as Charity 2. In fact, Charity 2's records did not contain any invoices supporting any of the 20 checks. Each of the checks had two signatures: GRANT's and the President of Charity 1. At least some of the signatures of the President of Charity 1 were forged. Each of the checks was endorsed for deposit in GRANT's -9256 account. The 20 checks deposited into GRANT's personal account totaled $503,410.33. GRANT did not use these funds to benefit Charity 1 or for the purposes she listed in on the checks. Instead, as part of her scheme to defraud, she used these funds for her own benefit, including by spending the funds on luxury travel, concerts, and tickets to sporting events.

11. GRANT also abused her position as finance manager to defraud Charity 1 of funds

INDICTMENT                                                        4

intended for deposit in Charity 1's employee's 401(k) accounts. On September 1, 2022, Charity 1 changed payroll providers from ADP, Inc., to TriNet. During a four-month transition period from September through December 2022, ADP transferred employee 401(k) contributions into Charity 1's WF Account. It was then Charity 1's responsibility to transfer the funds to TriNet. As finance manager, it was GRANT's responsibility to make that transfers.

12. GRANT did not transfer the employee 401(k) contributions to TriNet at any point between September and December 2022. As a result, in January 2023, Charity 1 had a surplus of $51,709 awaiting transfer to TriNet. Rather than make the transfer to TriNet, on January 18, 2023, GRANT deposited $49,325.23 from Charity 1's WF Account ending in -0257 into her personal WF account ending in -9256, with the description of "BUSINESS BUSINESS ACH TRINET INVOICE 3166." GRANT did not use the funds moved to her account from this January 18, 2023, transfer to benefit Charity 1 or Charity 1's 401(k). Instead, as part of her scheme to defraud, she used these funds for her own benefit, including by spending the funds on luxury travel, concerts, and tickets to sporting events.

13. GRANT also used legitimate vendor invoices sent to Charity 1 as cover to defraud Charity 1 of funds. Instead of paying the legitimate vendor invoices, she fraudulently initiated payments of Charity 1's funds to her personal account ending in -9256. For example, in 2022, Charity 1 held a fundraising event at Pebble Beach Resorts ("Pebble Beach"). On February 14, 2023, Pebble Beach sent Charity 1 an invoice for $22,355.24. It was GRANT's responsibility to pay this invoice. However, rather than pay the invoice, on March 17, 2023, GRANT transferred $22,355.24 to her personal WF account. In the WF online wire transfer form, GRANT falsely described this payment as being made to Pebble Beach. GRANT did not use these funds to benefit Charity 1 or for Charity 1's payment to Pebble Beach Resorts. Instead, as part of her scheme to defraud, she used these funds for her own benefit, including by spending the funds on luxury travel, concerts, and tickets to sporting events.

14. Pebble Beach followed up about the unpaid invoice later in March 2023. GRANT made two direct pay payments from Charity 1's account ending in -0247 to Pebble Beach's account, the first on April 10, 2023 for $19,058.39 and the second on May 11, 2023 for $3,296.85. The total of the two payments was $22,355.24, which was the full amount of the March Pebble Beach invoice. GRANT split

INDICTMENT                                                    5

this into two payments to conceal that she was paying the exact same invoice at second time.

15. GRANT also defrauded Charity 1 in connection with a July 2023 payment for Charity 1's rent. Charity 1 leased an office in Walnut Creek at a monthly rent of $8,945.97. On July 18, 2023, GRANT made a Wells Fargo Direct Pay payment from Charity 1's account ending in -0247 to her personal account ending in -9256 for $8,945.97. In the ACH memo line, Grant described the payment as "WC Rent." GRANT did not use these funds to benefit Charity 1 or for Charity 1's rent payment. Instead, as part of her scheme to defraud, she used these funds for her own benefit, including by spending the funds on luxury travel, concerts, and tickets to sporting events.

16. Because the property manager of Charity 1's property did not receive Charity 1's July 2023 rent payment, the property manager followed up with GRANT. As a further part of her scheme and to conceal her actions, GRANT falsely told the property manager that she had made the payment and sent a copy of the Direct Pay transaction records that included the false WC Rent description. After further inquiry, GRANT said she would issue a stop payment for the July 18 payment and send the payment again. There is no evidence she took either step.

COUNTS ONE THROUGH FOUR: (18 U.S.C. § 1343– Wire Fraud)

17. Paragraphs 1 through 16 of this Indictment are re-alleged and incorporated.

18. Beginning at a date unknown to the grand jury, but no later than November 29, 2017, and continuing through a date unknown to the grand jury, but to at least October 26, 2023, the defendant,

CARRIE LYNN GRANT,

did knowingly and with the intent to defraud devise and execute, and attempt to execute, a material scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omissions and concealment of material facts with a duty to disclose.

19. On or about the dates set forth below, in the Northern District of California and elsewhere, for the purpose of executing the scheme and artifice referred to above, and attempting to do so, the defendants did knowingly transmit and cause to be transmitted writings, signs, signals, pictures, and sounds in interstate commerce by means of wire communications:

INDICTMENT                                   6

| Count | Date | Item Wired |
|---|---|---|
| 1 | 1/6/2023 | ACH transfer of $28,407.99 from Charity 1 to Wells Fargo Account -9256 |
| 2 | 1/18/2023 | ACH transfer of $49,325.25 from Charity 1 to Wells Fargo Account -9256 |
| 3 | 4/10/2003 | ACH transfer of $22,355.24 from Charity 1 to Wells Fargo Account -9256 |
| 4 | 3/17/2020 | ATM check deposit of $23,834.86 from Charity 1 to Wells Fargo Account -9256 |

Each in violation of Title 18, United States Code, Section 1343.

COUNT FIVE:  (18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity)

20. Paragraphs 1 through 19 of this Indictment are re-alleged and incorporated.

21. On or about June 23, 2021, in the Northern District of California and elsewhere, the defendant,

CARRIE LYNN GRANT,

did knowingly engage in a monetary transaction by and through a financial institution, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, specifically, a wire transfer of $105,314.86 from a Wells Fargo Account ending in -9256 to a Bank of Hawaii Guarantee Trust escrow account, such funds having been derived from the specified unlawful activity of wire fraud, in violation of Title 18, United States Code, Section 1957.

FORFEITURE ALLEGATION:  (18 U.S.C. §§ 981(a)(1)(C), 982(a), & 28 U.S.C. § 2461(c) – Criminal Forfeiture)

22. All of the allegations contained in this Indictment are re-alleged and fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a), and Title 28, United States Code, Section 2461(c).

23. Upon a conviction for the offenses alleged in Counts One through Four of this Indictment, the defendant,

CARRIE LYNN GRANT,

shall forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2), and 28 U.S.C.

INDICTMENT                                             7

§ 2461(c) all property, real or personal, constituting, and derived from, proceeds the defendants obtained directly and indirectly as the result of those violations, including but not limited to the following:

 (a) a forfeiture money judgment in an amount equal to the total proceeds from the commission of said offenses.

 24. If any of the aforementioned property, as a result of any act or omission of the defendants –

 a. cannot be located upon the exercise of due diligence;
 b. has been transferred or sold to, or deposited with, a third person;
 c. has been placed beyond the jurisdiction of the Court;
 d. has been substantially diminished in value; or
 e. has been commingled with other property that cannot be divided without difficulty;

any and all interest the defendants have in other property shall be vested in the United States and forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

All in violation of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a); Title 28, United States Code, Section 2461(c); and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED: July 18, 2024        A TRUE BILL

                  /s/ *Foreperson of the Grand Jury*
                  FOREPERSON

ISMAIL J. RAMSEY
United States Attorney

/s/ *Evan M. Mateer*
EVAN M. MATEER
Assistant United States Attorney

INDICTMENT              8